## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-0367 (RMC)** |
| | : | |
| **v.** | : | |
| | : | |
| **JARON BRICE** | : | **Trial Date: Feb. 21, 2006** |

## GOVERNMENT'S SUPPLEMENTAL MOTION *IN LIMINE* TO ADMIT OTHER ACT EVIDENCE

The United States of America, through its undersigned attorneys to admit evidence that (a) the defendant, Jaron Brice, engaged in sexual acts with one juvenile (H.H.) not charged in the indictment and caused her to engage in prostitution for him and (b) used other females in addition to the ones charged in the indictment for prostitution. The evidence is admissible because (a) it is intrinsic to the prostitution-related counts and thus, is admissible as direct evidence of those counts and (b) under Rule 404(b), Fed.R.Evid., to show the defendant's modus operandi, knowledge, motive, plan, opportunity, lack of accident or mistake, and intent. In addition, the evidence that the defendant engaged in sex acts with H.H. is also admissible Rule 413, Fed.R.Evid. to show that the defendant engaged in a pattern with the females, particularly the young females, who he recruited and, ultimately, prostituted for him.[1] The United States incorporates by reference its "Motion *In Limine* To Admit Other Act Evidence" (hereinafter referred to as the government's "Initial Other Act Motion").

## INTRODUCTION

---

[1] To comply with the Court's February 3, 2006, Order, on February 14, 2006, the government turned over portions of statements of witnesses that relate to the evidence the government now seeks to admit.

**A.    The Instant Offenses**

The defendant is charged in a fourteen-count indictment charging sex trafficking of one juvenile, sex trafficking of an adult by force, fraud, and coercion, transportation of two juveniles and one adult for prostitution, first degree child sexual abuse of two juveniles, and pandering.[2] The government anticipates that the evidence at trial will show that the defendant used three females (two juveniles (K.H. and A.I.) and one adult (Shakita Proctor)) to engage in prostitution for him in the District of Columbia and elsewhere.  The evidence will further show that the defendant engaged in a deliberate scheme to recruit, seduce, control, and discipline these prostitute/victims so that they would engage in prostitution for him.  He employed numerous methods to carry out his scheme including having sex with his prostitutes and using psychological influence, threats of violence, and physical violence to control them.

**B.    The Other Act Evidence**

The government seeks admission of the following "other act" evidence.

(1)    For approximately two weeks in April 2004, during the time that the defendant was also using K.H. for sex and prostitution, the defendant used a 15-year-old juvenile (H.H.) for sex and prostitution.

(2)    During the time at issue in the indictment, March 31, 2004 (when the defendant met K.H. and H.H.) through May 17, 2005 (the date of the defendant's arrest in Miami, Florida)

---

[2]    The government intends to dismiss before trial Counts 2 (sex trafficking of K.H. by force, fraud, and coercion), 3 (sex trafficking of the minor A.I.), and 10 (the firearms count). The government will also submit a retyped Indictment in advance of trial.

the defendant used other females for prostitution.[3]

## DISCUSSION

The government asserts that the evidence that the defendant used H.H., a juvenile, for prostitution and sex and used other females for prostitution is intrinsic to all of the counts and, thus, is admissible as direct evidence of those counts.   In addition, the evidence is admissible under Rule 404(b), Fed.R.Evid., to show the defendant's modus operandi, knowledge, motive, plan, opportunity, lack of accident or mistake, and intent.  Finally, the evidence that the defendant engaged in sex acts with H.H. is also admissible under Rule 413, Fed.R.Evid.

**A.    Evidence That The Defendant Used Another Juvenile (H.H.) and Other Adult Females For Prostitution Is Admissible As Direct Evidence To Prove The Prostitution-Related Counts**

As is outlined in detail in the Government's Initial Other Act Motion, the defendant is charged with numerous counts involving his use of two juveniles (K.H. and A.I.) and one adult (Shakita Proctor) for prostitution.  Each of these counts requires the government to prove that the defendant committed an act or acts (i.e., transportation, recruitment, enticing, harboring, obtaining, causing, inducing, procuring, etc.) to an individual (here, K.H., A.I., and/or Shakita Proctor) with the knowledge and/or intent that the individual would engage in commercial sexual activity, i.e., prostitution.

Evidence that at the same time the defendant used other females, including one juvenile, for prostitution is admissible as direct evidence of these prostitution-related counts because the evidence is "intrinsic" to the crimes charged and is necessary to complete the story of the crimes

---

[3]     As the government witnesses (including Dr. Lois Lee) will explain, the street term for the circle of prostitutes that works for a particular pimp is "stable."  Thus, the witnesses will testify as to the other females that were in the defendant's stable.

alleged in the indictment.  <u>See</u> <u>United States v. Badru</u>, 97 F.3d 1471, 1474 (D.C. Cir. 1996), <u>cert.</u>

<u>denied</u>, 520 U.S. 1213 (1997) (evidence of criminal activity other than the charged offense is not

considered extrinsic evidence if it is an uncharged offense which arose out of the same

transaction or series of transactions as the charged offense, if it was inextricably intertwined with

the evidence regarding the charged offense, or if it is necessary to complete the story of the crime

of trial), <u>quoting</u> <u>United States v. Weeks</u>, 716 F.2d 830, 832 (11th Cir. 1983) (citations omitted).

<u>See also</u> <u>United States v. Alexander</u>, 331 F.3d 116, 126 (D.C. Cir. 2003) ( "If evidence is offered

as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference

regarding the character of the accused, it is properly considered intrinsic."), <u>quoting</u> <u>United States</u>

<u>v. Bowie</u>, 232 F.3d 923, 929 (D.C. Cir. 2000) (citations omitted).  Under that legal doctrine, the

evidence that the defendant used other females for prostitution is intrinsic, admissible evidence

for all of the prostitution counts (Counts One through Seven).

     At trial, the government will show through fact witnesses and the government's expert,

Dr. Lois Lee, that within the group of prostitutes who work for a particular pimp (the street term

for this group is "stable") is one prostitute who supervises the other prostitutes.  The street name

for this supervisory prostitute is "bottom bitch" or "bottom."  The supervisory prostitute's

responsibilities include recruiting other females for the pimp, teaching the new prostitutes (or the

ones that are "green") how to act like an experienced prostitute and how to be a prostitute,

instructing the new prostitute on the pimp's rules, watching the prostitute's compliance with the

pimp's rules (including the rule that the pimp receives all of the prostitutes' proceeds) and

reporting all infractions to the pimp.  K.H. and H.H. were recruited and taught some of the rules

by the female that was the defendant's supervisory prostitute at the time.   K.H. and H.H.

prostituted for the defendant along with the supervisory prostitute and other prostitutes working for the defendant at the time. H.H. left after about two weeks. This supervisory prostitute also recruited other females for Brice. At some point, K.H. because the defendant's supervisory prostitute and, as she had been taught, recruited females for Brice. Later, Shakita Proctor became the defendant's supervisory prostitute and she, in turn, recruited other females for the defendant. The defendant engaged in sex acts with virtually all of the women who prostituted for him. He engaged in these sex acts in front of other prostitutes and he encouraged the prostitutes to engage in sex acts with each other.

Evidence that the defendant had other prostitutes in his "stable" during the time he was also with the victims identified in the indictment is "necessary to complete the story" of the victims' experience and life with the defendant. Their stories would be incomplete without mentioning the other females that were with them and the defendant at the time as well as the roles of these females. For example, to explain how she met the defendant and learned how to be a prostitute, K.H. will discuss how she initially met Brice's supervisory prostitute and how that person introduced her to Brice and taught her the rules of the game. Similarly, A.I. will discuss that she was recruited by H.H. K.H. will also discuss how she rose in the ranks with Brice and, as was required of the supervisory prostitute, recruited females for Brice. Thus, discussion of the other participants helps explains the victims' status when they met the defendant, how they learned the rules of the prostitute/pimp world, what they aspired to become, and what they did once they (K.H. and Shakita Proctor) obtained the status of the defendant's "bottom." In addition, the evidence will show that the defendant's treatment of the females changed as they rose in the ranks within his "stable."

In addition to the evidence being necessary to complete the story, the "other act evidence" is admissible as direct evidence of the "knowledge" and "intent" elements in the prostitution counts. All of the prostitution counts require the government to prove that the defendant "knowingly" recruited, enticed, harbored, transported or obtained K.H. and Shakita and that he knew or intended that they would engage in prostitution. Testimony that other females worked as prostitutes for Brice during the time at issue in the Indictment is directly relevant to the knowledge and intent elements. The evidence shows how the defendant was able to entice the named victims to work for him (through the recruitment efforts of the supervisory prostitute), maintain control of the named victims (require them to compete with each other for supervisory status), train them (through learning from each other), transport them (by driving with other prostitutes), and discipline them (by requiring that they tell on each other and recruit other females).

Without discussion of the other females in the defendant's "stable," the witnesses' testimony will come across as strained and incomplete.

B.    **If The Court Does Not Admit The Evidence of Other Individuals Prostituting For The Defendant As Direct Evidence Of The Crimes Charged, Evidence Is Admissible In The Alternative Under Rule 404(b), Fed.R.Evid., To Prove The Defendant's Modus Operandi, Knowledge, Lack of Mistake, Motive, and Intent**

1.    Governing Law

Rule 404(b), Fed.R.Evid., permits the government to offer proof of a defendant's other crimes, wrongs, or acts so long as "the evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). See also United States v. Miller, 895 F.2d 1431, 1435 (D.C. Cir.), cert. denied, 498 U.S. 825 (1990). "[A]lthough the first

sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting

the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving

that a person's actions conformed to his character." United States v. Crowder, 141 F.3d 1202,

1206 (D.C. Cir. 1998) (en banc), cert. denied, 525 U.S. 1149 (1999), quoting United States v.

Jenkins, 928 F.2d 1175, 1180 (D.C. Cir. 1991). The rule lists several categories of appropriate

uses of extrinsic evidence – e.g., to prove motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident; however, this list is not exhaustive.

Miller, 895 F.2d at 1435.

Once the government has demonstrated that it is offering extrinsic evidence for a

legitimate purpose, such proof must still pass muster under the balancing test of Rule 403, Fed.

R. Evid. United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994). "[I]t is a sound rule that the

balance should generally be struck in favor of admission when the [extrinsic evidence] indicates

a close relationship to the offense charged." United States v. Harrison, 679 F.2d 942, 948 (D.C.

Cir. 1982), quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978).

    2.    Argument

As discussed above, the government anticipates that all three victims will testify that they

were recruited by another female for Brice, engaged in sexual acts with, and prostitution for, him,

traveled from the District of Columbia to other places for the purpose of engaging in prostitution

for him. Shakita Proctor and K.H. will also testify that, after being with Brice for a period of

time, they became the supervisory prostitute and, as was required, recruited females for Brice.

Evidence that Brice had other females, including one other juvenile, prostitute for him is

admissible under Rule 404(b) to prove the defendant's modus operandi, motive, opportunity,

intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

As discussed above, the success of Brice's operation depended on having a hierarchy of prostitutes, treating the prostitutes differently depending on their status in the "stable," and requiring the supervisory prostitute to recruit, train, and supervisor the new (or "green") prostitutes. As such, evidence relating to the defendant's other having prostitutes in addition to the three identified in the indictment, clearly demonstrates each of the items listed in Rule 404(b), i.e., modus operandi, motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident.

There is strong evidence that the defendant had other prostitutes working for him during the time he was using the named victims. K.H. and Shakita Proctor will both testify that numerous other females prostituted for the defendant, and the government anticipates that other witnesses will corroborate their testimony. The evidence that H.H. prostituted for the defendant, and had sex with him, is also strong. Although H.H. testified under oath that she did not engage in sexual acts with Brice and did not prostitute for him, K.H. was an eye-witness to these acts. In addition, the government may call one other witness who was an eye witness to these acts.

The evidence the government seeks to introduce is far more probative than prejudicial under Rule 403. As demonstrated above, the evidence shows the manner in which the defendant recruited, trained, and maintained the named victims. The evidence shows the relationship of the named victims with the defendant by demonstrating their rising status with him. As such, the evidence is essential to the jury's understanding of the complete picture of the defendant's operation.

On the other side of the balance, as discussed in the "Initial Other Act Motion," this

evidence is "prejudicial" only in the sense that it tends to incriminate Brice for the very crimes with which he has been charged.  That does not render it inadmissible under Rule 403.  Rather, only **unfairly** prejudicial evidence may be excluded; such evidence must have "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Old Chief v. United States, 519 U.S. 172, 180 (1997), quoting Advisory Committee Notes on Fed. Rule Evid. 403.

As with the evidence at issue in the Initial Other Act Evidence, any prejudice is minimal. The jury will already hear that the defendant used two juveniles and one adult for prostitution and engaged in various sexual acts with them including oral, vaginal, and anal.  They will also hear that the defendant encouraged K.H. and Shakita Proctor to have sex with each other in front of him and customers.  They will hear that the defendant used physical violence and psychological abuse to control them.  Evidence that the defendant's "stable" was larger than the three females at issue in the indictment, and that he had sex with another juvenile whom he met when he met K.H., is no more prejudicial or incriminating than the other evidence.

Accordingly, the evidence should also be admissible under Rule 404(b).

**C.    The Evidence Of the Defendant's Sexual Contact with H.H. Is Admissible under Rule 413, Fed.R.Evid.**

1.    Governing Law

As was outlined in the government's Initial Other Act Motion, Rule 413, Federal Rules of Evidence, provides that "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."

The district court should consider factors that affect the probative value of the proffered evidence, including the similarity of the prior acts to the act charged, the closeness in time of the prior acts to the charged conduct, the frequency of the prior acts, the presence or absence of intervening events, and the need for additional testimony to explain the prior acts. Blind-Doan v. Sanders, 291 F.3d 1079, 1082 (9th Cir.2002); United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir.1998).

Evidence that is relevant under Rule 413, however, is also subject to Fed.R.Evid. 403. Therefore, even if the district court concludes that the proffered evidence falls within the ambit of Rule 413, it must still consider whether the probative value of the evidence is "substantially outweighed" by the risk of prejudice, confusion, or undue delay. Fed.R.Evid. 403. However, Rule 403 must be applied to allow Rule 413 its intended effect. United States v. LeCompte, 131 F.3d 767, 769 (8th Cir.1997). See also United States v. Guardia, supra, 135 F.3d at 1331 (10th Cir.1998) (noting Congressional intent that the presumption be in favor of admission); United States v. Larson, 112 F.3d 600, 604 (2d Cir.1997) (quoting Congressional sponsors' statements that "[t]he presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice").

2.    Argument

The defendant's sexual conduct toward H.H., which occurred during the exact same time he had sex with K.H., is clearly admissible under Rule 413 as it is relevant to show that the defendant engaged in a pattern of conduct towards his prostitutes, including his young prostitutes. The government anticipates that K.H. will testify that she and H.H. met Brice at the same time at a party. The defendant took them, and two other prostitutes, to a hotel in Maryland.

-10-

He had sex with both of them (K.H. and H.H.) that evening. Both started prostituting for him the next day. Neither had prostituted before they met Brice. Thus, the evidence is relevant to show that the defendant used sex to recruit, entice, maintain, and control females to his prostitution lifestyle.

As for the 403 balance, the prejudicial effect of this testimony is minimized by the fact that the evidence that he had sex with H.H. is less incriminating that evidence they will hear from K.H. and Shakita Proctor regarding frequent sexual acts and orgies.[4]

## CONCLUSION

The evidence of other crimes that the defendant engaged in sexual acts towards H.H., a juvenile, and used H.H. and adult females besides Shakita Proctor for prostitution is admissible as direct evidence of the prostitution counts because it is intrinsic to the crimes charge and is relevant to show the defendant's modus operandi, knowledge, motive, plan, opportunity, lack of accident or mistake, and intent. In addition, it is admissible under Rule 404(b), Fed.R.Evid., to show the defendant's modus operandi, knowledge, motive, plan, opportunity, lack of accident or mistake, and intent. Finally, the evidence that the defendant engaged in sexual acts with H.H. is

---

[4] The evidence is also admissible under D.C. law to demonstrate that the defendant has an "unusual sexual preference" for young prostitutes who work for him. D.C. court have consistently admitted evidence of other sexual acts to prove that the defendant has an "unusual sexual preference" for young boys or girls. See, e.g., Feaster v. United States, 631 A.2d 400 (D.C. 1993); (Tyrone) Johnson v. United States, 610 A.2d 729 (D.C. 1992) (petition for rehearing en banc denied); Adams v. United States, 502 A.2d 1011 (D.C. 1986); Pounds v. United States, 502 A.2d 306 (D.C. 1986); Dyson v. United States, 97 A.2d 135 (D.C. 1953). See, e.g., Howard v. United States, 633 A.2d 524, 526 (D.C. 1995); Feaster v. United States, 631 A.2d 400 (D.C. 1993); (Tyrone) Jonson v. United States, 610 A.2d 729, 730 (D.C. 1992); McLoud v. United States, 568 A.2d 1094, 1095-96 n.1 (D.C. 1990) (carnal knowledge); Pounds v. United States, 529 A.2d 791, 794 (D.C. 1987); United States v. Calaway, 408 A.2d 1220, 1227 (D.C. 1979).

admissible under Rule 413, Fed.R.Evid.

WHEREFORE, the United States respectfully requests that the Court allow the United States to present these other acts during its case-in-chief.

Respectfully submitted,

KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

By:    _____

SHARON MARCUS-KURN
Assistant United States Attorney
AZ Bar No. 10970
555 4th Street, NW, Room 10-122
Washington, D.C.  20530
(202) 353-9462
sharon.kurn@usdoj.gov

By:    _____

_____

MYESHA BRADEN
Special Assistant United States Attorney
DC Bar No. 461485
555 4th Street, N.W.
Washington, D.C. 20530

-12-