UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No. 05-0367 (RMC) |
| | : | |
| vs. | | |
| | : | Trial Date: February 21, 2006 |
| JARON BRICE, | | |
| | : | |
| Defendant. | | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL

The United States of America, through undersigned counsel, responds in opposition to the defendant's motion to continue trial. In support of its opposition the Government states as follows.

### FACTUAL BACKGROUND

1.  K.H.

In the Government's Motion *In Limine* to Admit Other Act Evidence, the Government put the defense on notice that during the time she was with the defendant, approximately March 31, 2004, through October 31, 2004, K.H. took the drugs marijuana and ecstasy.

On February 14, 2006, the Government notified the defense that pursuant to two reports given to the Court and the Government in a sealed hearing, the Government learned that K.H. has been diagnosed with Depressive Disorder, NOS, and Conduct Disorder, Adolescent onset type. The Government further notified the defense that K.H. is currently being treated with the medication Prozac (Fluoxentine) under the supervision of a physician. On February 15, 2006, and pursuant to the Court's instruction, the Government provided to the defense copies of two

1

medical evaluations of K.H.  The first report, dated November 22, 2005, and written by Madhu Bhatia, MD., the attending physician at Riverside, noted in relevant part the following in regards to K.H.:

> Thought Process: Intact.  Thought Content: Relevant. . . The patient is also well oriented to day, date, and time. . . The patient's recent and remote memory, however, is intact and can remember the words red, box, table after five minutes. The patient demonstrates impaired judgement and poor decision making skills in the past as well as poor impulse control.  She denies any current hallucination or delusional thinking.  However, has had recent suicidal thoughts when agitated.

Dr. Bhutto gave the following admitting diagnoses:

Axis I:  Depressive Disorder, NOS
          Rule out Bipolar Disorder
          Cannabis Abuse
          Alcohol Abuse Disorder
          Hallucinogen Ecstasy Abuse
          Conduct Disorder, adolescent onset type
          Rule out Posttraumatic Stress Disorder

The second report, written on November 14, 2005, by Social Worker Monique Wilson, made similar findings.

2.  A.I.

On February 14, 2006, the government notified the defense that A.I. is being treated with Prozac and Abilify under a physician's care and that, based on our information, she had previous hospitalizations for suicidal thoughts.  At least one hospitalizations occurred immediately before A.I. was with the defendant in approximately April 2006.  The government also believed that she had been previously diagnosed with Bipolar Disorder.  Subsequent conversations with A.I.'s treating psychiatrist revealed that that information was incorrect.  A.I. has not been diagnosed with Bipolar Disorder, but exhibited symptoms consistent with Bipolar Disorder upon her entry

into the placement facility. Her actual diagnosis is that of Mood Disorder. Furthermore, it was disclosed that A.I. is no longer taking Abilify, the medication associated with Bipolar Disorder.

ARGUMENT

1. LEGAL STANDARD

A trial court has broad discretion to allow cross-examination regarding a witness' previous mental history, and may allow admission of relevant portions of the mental health records or records relating to current prescription drug use for impeachment purposes. <u>United States v. Smith</u>, 77 F.3d 511, 516 (D.C.Cir. 1996). However, as the D.C. Circuit held in <u>Smith</u>, supra, "evidence regarding mental illness is relevant **only when it may reasonably cast doubt on the ability or willingness of a witness to tell the truth.**" (emphasis added). <u>Id.</u> See also <u>United States v. Jiminez</u>, 256 F.3d 330, 343-44 (5th Cir. 1001), <u>cert. denied</u>, 534 U.S. 1140 (2002) (mental health records are only relevant when they "evidence an impairment of the witness's ability to comprehend, know, and correctly relate the truth."); <u>United States v. Butt</u>, 955 F.2d 767, 82-83 (1st Cir. 1992) ("Mental instability is relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth."). See also, <u>Velasquez v. United States</u>, 801 A.2d 72, 79 (D.C.) (quoting <u>United States v. Lopez</u>, 611 F.2d 44, 45 (4th Cir. 1979)), <u>cert. denied</u>, 537 U.S. 963 (2002) (a witnesses' "psychiatric history is an area of great personal privacy which can only be invaded in cross-examination when required in the interest of justice") (citations omitted).

In conducting an inquiry into the relevance of mental health records or prescription drug

use, the Court should consider the medical history of the specific witness in question so as to render an informed decision regarding the relevance of that history." United States v. Smith, supra, 77 F.3d at 516.  Factors which the district courts should consider before permitting such cross-examination include: (1) the nature of the psychological problems; (2) whether the witness suffered from the condition at the time of the events to which the witness will testify; (3) the temporal recency or remoteness of the condition." Boggs v. Collins, 226 F.3d 728, 742 (6th Cir. 2000).

 Once the defense asks the witness about his/her history of mental health problems, the government is free to question the witness on redirect about the reason for his illness.  United States v. Strothers, 77 F.3d 1389, 1393 (D.C. Cir. 1996).

 While the government has an obligation to provide Brady material to the defense at a time that it can use the material in an effective manner at trial, there was no Brady violation in this instance because, as discussed below, there is nothing contained in K.H.'s mental health records and/or both individuals' use of Prozac that "casts doubt on their ability or willingness to tell the truth." United States v. Smith, supra.  In addition, the government provided the records, which consists of six pages, a week in advance of trial - more than sufficient time to evaluate them and use them effectively at trial if allowed by the Court.   The First Circuit dealt with a similar issue in United States v. Perez-Ruiz, 353 F.3d 1 (1st Cir. 2002).  There, the government had in its possession well in advance of trial prison "mental health records" relating to its "star witnesses.".  The government did not provide the records to the defense and the defense obtained them after trial began.  In finding that there was no abuse of discretion in the trial court's denial of a defense request for a continuance, the First Circuit held:

> A review of the record leaves no doubt about defense counsel's ability to impeach [the witness] using other evidence. . . The ability to amount an effective cross-examination often is of great significance in delayed disclosure cases involving impeachment evidence and we find it significant here. . . The missing records were neither voluminous nor arcane and defense counsel had roughly 36 hours in which to scrutinize them . . . before he brought the matter to the forefront. The district court found that he had sufficient opportunity to comprehend their significance and to consult with an expert if he had so desired. That supportable finding weighs heavily in favor of the court's decision that more time was unwarranted. . . So too was defense counsel's refusal to recall [the witness] for further cross-examination (citations omitted).

Id. at 8. See also United States v. Bender, 304 F3d 161, 164-65 (1st Cir. 2003) (no Brady violation when government produced mental health records produced the day of trial; assuming Brady violation, defendant must still show that "learning the information altered the subsequent defense strategy, and [that] given a more timeous disclosure, a more effective strategy would likely have resulted") (citation omitted).

2.  K.H.

There is no evidence that K.H. has a history of mental illness and, thus, the government requests that the Court preclude cross-examination regarding her treatment at Riverside Hospital. The government knows of no information that she has ever been hospitalized for any mental disorder or condition. She was placed at Riverside Hospital pursuant to a D.C. Superior Court material witness warrant in this investigation. Upon admission there, the staff did an evaluation of her, as is their standard practice. There is nothing in Dr. Bhutto's November 23, 2005, report to suggest that K.H. suffers from any mental condition that may "reasonably cast doubt on the ability or willingness of [the] witness to tell the truth." United States v. Smith, supra, 77 F.3d at 516. The physician found her to be depressed and, possibly, suicidal, but there is no evidence or suggestion that those conditions would affect her ability to testify truthfully and accurately.

As to her current use of a low dosage of Prozac,[1] the Court should similarly, in its discretion and under Rule 403, Fed.R.Evid., preclude cross-examination regarding this drug usage. K.H. is a juvenile and a sexual assault victim. It is anticipated that she will be subjected to vigorous cross examination regarding extremely personal and painful matters. There is no evidence in the records that she was prescribed Prozac for any reason except for depression and suicidal thoughts. In addition, both Riverside reports evaluate her mental condition during a time when she was taking 60 mg/day of Prozac, three times the amount of her current prescription. Neither report found that the drug or any mental defect or condition caused an impairment of K.H.'s ability to understand or correctly relate the truth. United States v. Jiminez, supra, 256 F.3d at 343-44. Applying the Rule 403, Fed.R.Evid., balancing test, the prejudice to K.H. from cross examination on such a topic, one which she will know virtually nothing about, clearly outweighs any probative value. Such cross examination will confuse the issues, mislead the jury, and cause unfair prejudice to K.H.    See United States v. Plescia, 48 F.3d 1452, 1456 (7th Cir.), cert. denied, 116 S.Ct. 114 (1995) (in upholding trial judge's ruling preventing cross examination of government witness on use of anti-depressants at time of trial, court stated that "trial judge correctly ruled that line of cross-examination more prejudicial and confusing than useful for impeachment, particularly because Prozac had often been mentioned negatively in popular media at the time").

Finally, the government objects to expert opinion regarding the effects of Prozac on a person generally. The government submits that such generalization would be of marginal

---

[1] The government learned that at her currently placement she is being prescribed 20 mg or Prozac.

relevance, particularly since while on Prozac K.H. has not exhibited any delusional thinking or inability to assess or convey the truth, and would confuse and sidetrack the jury.  See United States v. Butt, supra, 955 F.2d at 85 (affirming exclusion of expert testimony that "describe[d] tendencies only, cataloging a range of behavior that one so diagnosed might or might not, sometimes, exhibit").  If the court chooses, it could conduct a voir dire examination to determine whether K.H. is competent to testify.  Courts have recognized that "[w]hile medical evidence may be difficult to understand without the use of an expert opinion, courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition."  Collins v. Kibort, 143 F.3d 331, 337 (7th Cir. 1998).

Finally, should the court choose to allow such expert testimony, the government reserves the right, under Rule 801(d)(1)(B), Fed.R.Evid., to introduce into evidence statements made by K.H., in the grand jury or otherwise, before she was given Prozac that are consistent with her trial testimony.  See Rule 801(d)(1)(B) (statement is not hearsay if "consistent with the declarant's testimony and offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive").

A.I.

The government does not have any mental health treatment records from her current placement or her previous hospitalizations.  We have been told by A.I.'s mother and her therapist Barbara Wright that all hospitalizations were for suicidal ideation.  We do know, however, that at least one previous hospitalization was immediately before she met Brice.

The government anticipates that the parties will be given access to mental health records from her current placement.  After review of these records, the government will opine whether

further inquiry is warranted.

For the same reasons discussed above with reference to K.H., the government opposes cross-examination of A.I. on her current Prozac use.

Were the Court to rule that the defendant's rights require an examination of medical documents not currently in the possession of the parties, the government will move to sever the counts in the current Indictment that involve A.I. (Counts Five, Eleven, and Thirteen) and ask to proceed with trial on February 21, 2006, on the remaining counts.

4.   Defense Proffer

As noted above, the cross examination of a witness based on their mental health history is soundly within the discretion of the Court, which, in making its decision, is "entitled to weigh the potential unfairness of a free wheeling inquiry intended to stigmatize the witness against whatever materiality the evidence might have." United States v. Honneus, 508 F.2d 566, 573 (1st Cir. 1974). To enable the Court to make a determination regarding this issue, the defendant should, make an offer of proof of the evidence it seeks to develop on the witness' mental impairment. Id at 572-573. The defendant must point to something either in the record of the witness' psychiatric examinations or elsewhere that establishes an incapacity on the witness' part to have observed the events alleged in the indictment, or to recall those events sufficiently to testify accurately about them at trial. Id.

The Government submits that the defendant has not and cannot make a sufficient proffer with respect to K.H. because her mental health records firmly establish that her condition does not affect her ability to perceive or interpret events. Moreover, the records do not establish that her taking of the drug Prozac has or will impair her mind. See Bennett v. U.S., 876 A.2d 623,

633-634 (D.C. 2005) (despite diagnosis of schizophrenia, witnesses behavior (as distinct from the label for his illness) at or near the time of trial and the events about which he testified showed no symptoms demonstrating or bearing upon his inability to observe, recall or relate accurately and truthfully his observations.).

Nonetheless, if the court determines that either witnesses' current prescription drug usage or mental health history is the proper subject of cross examination, the government requests that the court place strict limits on such examination.  See Delaware v. Van Arsdall 475 U.S. 673, 679 (1986) (this Court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.").

CONCLUSION

Based on the foregoing, the Government opposes the defendant's Motion for Continuance and requests that the motion be denied.

                                        Respectfully submitted,
                                        KENNETH L. WAINSTEIN
                                        United States Attorney


BY: _____
    SHARON MARCUS-KURN
    Assistant United States Attorney
    AZ Bar No. 10970
    555 4th Street, N.W. Room 10-122
    Washington, D.C. 20530
    (202) 353-9462

|  | BY: | _____ |
|---|---|---|
| _____ | | MYESHA BRADEN |
| | | Special Assistant United States Attorney |
| | | DC Bar No. 461485 |
| | | 555 4th Street, N.W. |
| | | Washington, D.C. 20530 |
| | | (202) 514-6037 |