UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>JARON BRICE, )<br>  )<br>Defendant. )<br>  ) | Crim. No. 05-367 (RMC) |

**DEFENDANT JARON BRICE'S MOTION TO RECONSIDER
THE COURT'S RULING ON THE ADMISSIBILITY OF
THE MENTAL HEALTH HISTORY OF GOVERNMENT WITNESS K.H.**

Defendant, Jaron Brice, through undersigned counsel, respectfully moves the Court to reconsider its verbal order granting the government's notice of mental health histories and drug treatment modalities of the juvenile victims and motion *in limine* to exclude evidence (hereinafter "the government's Motion" or "Motion"). By its order, the Court is prohibiting the defense from (1) using a report from a psychiatric examination of government witness K.H. conducted at Riverside Hospital; and (2) cross-examining K.H. about her mental health issues.

Mr. Brice respectfully submits that the Court's decision to prohibit the defense from inquiring into the mental health history of government witness K.H. on cross-examination at trial was made on the basis of a procedure that was flawed in a number of crucial respects, and also deprives him of a fair trial. The Court's ultimate ruling, which was based on the deficient procedure, was also incorrect under the law. For those two reasons, the Court should revisit its ruling, this time with assistance from a mental health professional, and only after obtaining all of the records and holding an evidentiary hearing on the matter.

**PROCEDURAL HISTORY**

The government filed its Motion on February 14, 2006, one week prior to the Mr. Brice's February 21 trial date.[1] At a status hearing held <u>the same day</u> (February 14), which was held at the defense's request on an unrelated matter, and before the defense had had an opportunity to file a written Opposition, research the government's legal claims, or even thoroughly review the government's pleading, the Court took up the government's motion.[2]

At the hearing, the government argued that there were crucial differences among the disorders suffered by the two government witnesses, A.I. and K.H., and that while the Court should review the records of the former, there was no reason to review the records of the latter

---

[1] The motions deadline in this case was January 6, 2006. The defense complied with that deadline and filed its motion to suppress identification, the only motion filed on that date. The motions deadline notwithstanding, in the week prior to trial, the government filed two additional motions: the Motion addressed here (filed February 14, 2006), and a motion to admit further evidence under Rule 404(b) (filed February 15, 2006). In neither case did the defense have the opportunity to respond consistent with the Local Rules. In addition, despite sending the government a discovery letter on January 6, 2006 requesting all <u>Brady</u> information, the defense did not receive <u>Brady</u> material (the grand jury transcripts and FBI 302s) until February 16, 2006. During that time period, the defense also had to prepare the Pretrial Statement, as well as prepare for trial. As the Court is already aware, it is the defense's position that, given these circumstances, Mr. Brice has not received an effective defense and he will not at trial. <u>See</u>, <u>e.g.</u>, 2/14/06 Tr. (Rough Draft) at 2; Def.'s Motion to Continue Trial. Particularly given the circumstance that witness A.I.'s incarceration status is no longer a factor militating against a continuance, a continuance of the trial is appropriate and, the defense respectfully submits, constitutionally required. The Court's apparent desire to force this case to trial without giving the defense an adequate opportunity to address these issues is troubling, and also deprives defendant of his right to a fair trial.

[2] While defense counsel was the first to actually raise the issue of the Motion, it was only to request that the defense be permitted more time to respond and to consult appropriately with a mental health professional. <u>See</u> Tr. at 4. Based on those factors (among others mentioned by defense counsel), the defense was also requesting a continuance of the trial. The Court stated that it had intended on addressing the Motion at the February 14 hearing in any event. <u>See</u> <u>id.</u> at 2.

because all K.H. suffered from was "non-specific depressive disorder." Tr. at 12. The defense argued that all of the records would have to be reviewed by a qualified medical professional. Tr. at 16 ("While the Court may be able to look at, to look at records and say okay this is diagnosis has been made, it seems to me particularly given the stakes in this case, that the records are going to have to be reviewed by a qualified medical professional").

The Court stated that it did not have a problem with Mr. Brice's request that the records be reviewed by a qualified medical professional and ruled that it would be done. See Tr. at 19. The Court's ruling applied to both witnesses A.I. and K.H. See id. ("I don't have any problem with asking for a government appointed expert to evaluate and advise the Court on whether from those records the expert believes that either, that there's an indication that either of these potential witnesses would have been affected in her perception at the time of the events in question because either the diagnosis or any medication that might be revealed that she was taking at the time. Or that either of them would be effected in their cognitive ability now to remember and testify well to remember and also to testify"). The defense stated that it would hold any objection to this procedure in abeyance, and the Court agreed that the defense could object at a later time. See id. At the conclusion of the hearing, the Court and the parties discussed the selection of an appropriate medical health professional to assist the Court.

On February 15, 2006, the government forwarded the name and resume of Dr. Mitchell Hugonnet to the defense and to the Court. The Court inquired of defense counsel as to their position on Dr. Hugonnet. The defense noted concerns about prior government contacts with Dr. Hugonnet. See 2/15/06 Tr. at 3. The defense stated that it would certainly be requesting a hearing on the doctor's conclusions. The defense made clear that the Court's appointment of Dr.

3

Hugonnet did not end the issue. The government then noted that Dr. Hugonnet was not available until Friday, February 17, to meet with both minor government witnesses.

The Court at that point expressed concern about the legal propriety of "abbreviating the inquiries into the mental health conditions of these two important witnesses." Tr. at 7. The government responded that the witnesses were differently situated, and that any inquiry into K.H. was a "fishing expedition." In substance, the government was requesting that the Court revisit its February 14 ruling that both witnesses and their respective medical records would go through the procedure set up involving Dr. Hugonnet. During the government's argument, it mentioned that K.H. had actually been psychologically evaluated twice – once at Riverside and once at the new, undisclosed location she had been moved to. Although the government stated that "the conclusion was the same," it later represented to defense counsel that it was not even aware if any records were available from the new location. When defense counsel objected that the Riverside records set forth a more serious diagnosis then the government had acknowledged, the Court stated that it had previous knowledge concerning the Riverside records and that, based on this knowledge, the Court did not consider the Riverside records to be reliable. See id. at 7 ("the emphasis that you find in that document was merely the institution's desire and the city's desire to have her stay at that location").

Based on the government's argument and the Court's opinion regarding the unreliability of the Riverside medical records involving K.H. (an opinion the defense has not been allowed to explore in any substantive fashion), the Court stated that "we should not continue the trial based on the situation of K.H." The Court stated, however, that it was "still concerned about A.I. and whether or not if we proceeded to trial we would have to retry this case." Id.

The Court concluded that it would issue an order so that "they will release [previously unavailable] records for A.I." Id.  The Court then stated that "[p]erhaps you could notify Dr. Hugonnet that I would like to have him review those records." Id.  The Court never stated that Dr. Hugonnet would not also be reviewing K.H.'s already available records.  Both defense counsel believed that Dr. Hugonnet would still be reviewing the mental status and mental histories of both government witnesses, including both sets of medical records.

At a hearing held on February 17, 2006 (for which a transcript is not yet available), the Court stated that it was prohibiting the defense from:  (1) using the Riverside report concerning K.H.'s mental health history; and (2) cross-examining K.H. on her mental health condition and history.  The Court stated that the only further inquiry that would be allowed on this matter was a *voir dire* of K.H. on these issues at trial.  To the surprise of the defense, the Court also revealed that it had not consulted with Dr. Hugonnet or any other mental health professional in making its ruling.

Finally, defense counsel raised the issue that, according to the government, another psychological evaluation had been conducted at the new, undisclosed location K.H. had been moved to.  Defense counsel informed the Court of its discussion with government counsel, wherein government counsel had stated that it did not know whether any mental health records were available from the new location.  The defense requested an examination of any records from the new location.  The Court stated that it would not request or review those records and, for some reason, connected the defense's request to its motion for a continuance.  Defense counsel responded that the issues were distinguishable.

**DISCUSSION**

First, the Court should revisit its ruling on whether to permit cross-examination of K.H.'s mental health history. K.H. is the most important government witness in this case. Her recollection of events, and her credibility, will be among the most crucial issues at Mr. Brice's trial. Her current mental health status and her history of mental health problems speak directly to these issues. See, e.g., Chnapkova v. Koh, 985 F.2d 79,81 (2nd Cir. 1993) (exclusion of hospital records showing patient's history of psychiatric problems was erroneous even where hospitalization had been five years earlier; "A clinical history of mental illness is probative of the credibility of the witness"); United States v. Martino 648 F.2d 367, 385 (5th Cir. 1981) ("the jury was properly instructed to consider evidence of a witness's mental condition at the time of the incidents in judging the credibility of the witness and the weight to be given to that witness's testimony").[3]

The standard in this Circuit is not particularly demanding. As stated in United States v.

---

[3] Although involving more serious diagnoses than what has been disclosed to defense counsel thus far in this case (see discussion of unreviewed records, infra), the Pryce case from this Circuit and the Lindstrom case are also instructive. In United States v. Pryce, 938 F.2d 1343 (D.C. Cir. 1991), defendant Gaskins was convicted of various drug and firearms offenses. The court held that the refusal to allow defense counsel to cross-examine a cooperating, immunized witness concerning his past hallucinations (which had occurred prior to the time of the events about which he was testifying), was reversible error as to Gaskins. "This restriction was an abuse of the trial court's discretion to limit cross-examination on matters affecting credibility... and violated the confrontation clause of the sixth amendment." Id. at 1345.

Similarly, in United States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983), the court reversed defendants' convictions because the trial court had denied defendants access to medical records suggesting that the government's witness suffered from psychiatric illnesses, including delusions, and limited questioning of the witness concerning her prior psychiatric treatment and confinement.

Smith, 77 F.3d 511, 516 (D.C. Cir. 1996), "evidence regarding mental illness is relevant ... when it may reasonably cast doubt on the ability or willingness of a witness to tell the truth." Notably, the Smith case involved substantially the same diagnosis present in this case: depression. See id. at 516. Under Smith, evidence of K.H.'s mental health problems–even if limited to depression, which is far from clear based on the undeveloped record in this case--is admissible. See also United States v Strothers, 77 F.3d 1389, 1393 (D.C. Cir. 1996) (holding that defendant's Sixth Amendment right to confront witnesses and due process not violated because "[t]he court at no time prohibited the appellants from impeaching [the government witness'] reliability by cross-examining him about his [hospitalization for depression] but simply ruled that if they did the government could put [the witness'] mental health into context on redirect").

Second, when reconsidering its ruling on the use of K.H.'s mental health history, the Court should, at a bare minimum, consult with a neutral mental health professional, which was the procedure the Court had set forth at the February 14 hearing and the one that the defense believed the Court was following until the Court stated otherwise at the February 17 hearing. As in Smith, which, as discussed above, also involved a diagnosis of depression, the argument that "a patient suffering from depression would not necessarily be subject to symptoms that might cast doubt on his testimony as a witness" is "not a medically verifiable rule that can be asserted with confidence, given the widely varying forms of depression and vast array of accompanying symptoms." Id. To determine what is "medically verifiable," the defense respectfully submits that the Court must involve a neutral mental health professional, which was the procedure originally set forth in the Court's February 14 ruling.

Finally, the Court should clearly have requested and reviewed any records from K.H.'s

7

new location. Although the government has stated that the mental health professionals at the new location reached the "same" conclusion as the evaluators at Riverside, this argument makes no sense given the Court's finding that the Riverside diagnosis–which was more serious then depression—was unreliable. Indeed, the government's representation about the diagnosis at the new facility calls into question the Court's representations about the unreliability of the Riverside report, and clearly warrants a continuance of the case to resolve this troubling issue. Moreover, the Court should not simply accept the government's untested and unsubstantiated representation on this critical issue without any further inquiry.[4] In <u>Smith</u>, 77 F.3d at 516-17, the Circuit reversed the defendant's conviction on the basis that the trial court should have reviewed a witness' medical records before ruling that they were immaterial. In this case, the Court has not even made such a ruling – it has merely said that it refuses to look at the records because the Court perceived some unspoken connection between the review of the records and the Court's adamant position on maintaining the trial date in this case. But as the D.C. Circuit has cautioned in this situation, "[t]he soundest course ... is for the District Court to consider the medical history of the specific witness in question so as to render an informed decision regarding the relevance of that history." <u>Id.</u> at 516. Indeed, in <u>Smith</u> the court stated that such a review was "incumbent" on the District Court. <u>See id.</u>

Here, without the full set of records, the Court's examination was by definition incomplete, and cannot be characterized as "informed." Under an incomplete examination, "there

---

[4] Needless to say, it would be nearly impossible if not impossible for the defense to obtain K.H.'s records through its own efforts, as the defense has no idea where K.H. is currently being held (not to mention the legal issues obstacles the defense would face if it made such an effort).

simply [is] no basis for deciding whether the failure to disclose these records constituted a violation of the Government's discovery obligation." Id. at 513. "The simple point is that, without viewing the medical records, there was no way for the District Court to know the extent of [the witness'] symptoms." Id. at 517.

In addition, the defense should be allowed adequate time to obtain its own expert and respond adequately to the government's motion. The government's late disclosure, and this Court's refusal to allow the defense this opportunity, again result in a denial of defendant's right to a fair trial.

## CONCLUSION

For the reasons stated above, the defense respectfully submits that the Court should revisit its ruling on the government's Motion, this time with all of the records, with the assistance from a mental health professional, and only after an evidentiary hearing has been held on the matter. Mr. Brice respectfully requests a hearing on this Motion.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____

Shawn Moore
Jonathan S. Jeffress
Counsel for Jaron Brice
625 Indiana Avenue, N.W., Ste 550
Washington, D.C. 20004
(202) 208-7500

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 05-367 (RMC) |
| ) | |
| JARON BRICE, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Upon consideration of the defendant's motion to reconsider, and any opposition thereto, it is hereby

**ORDERED** that the Motion is **GRANTED**.

**SO ORDERED.**

_____
ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE

_____
DATE

Shawn Moore, AFPD
Jonathan S. Jeffress, AFPD
Sharon Marcus-Kurn, AUSA
Myesha Bayden, AUSA