**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Crim. No. 05-367 (RMC)** |
| | ) |
| **JARON BRICE,** | ) |
| | ) |
| **Defendant.** | ) |

———————————————————

**DEFENDANT JARON BRICE'S OBJECTIONS TO PRESENTENCE**
**REPORT AND PART II OF HIS MEMORANDUM IN AID OF SENTENCING**

Mr. Jaron Brice, by his attorneys, pursuant to Rule 32, Federal Rules of Criminal Procedure, hereby respectfully submits his objections to the Presentence Report ("PSR") and Part II of his Memorandum In Aid of Sentencing.  Based on all of the sentencing factors in this case, including most notably:  (1) the "history and characteristics of the defendant," as set forth in Part I of Mr. Brice's Memorandum; (2) the fact that Mr. Brice has very little criminal history and **no prior felony convictions whatsoever**; and (3) a consideration of the properly calculated Guidelines range, the defense respectfully submits that the appropriate sentence in this case is no greater than 120 months incarceration.  Furthermore, a sentence of ***life imprisonment***, as the government requests, would be legally erroneous and unjust under the facts and circumstances of this case.  The defense respectfully submits that, for many reasons, including those set forth below, a sentence of that magnitude for Mr. Brice would be entirely unwarranted.

## BACKGROUND[1]

**A.  Procedural History.**

On October 4, 2005, Jaron Brice was indicted on seventeen prostitution-related counts under both federal statutes and the D.C. Code.  Prior to trial, the government dismissed all but eleven counts of the indictment.  Among others, the government dismissed the count alleging that Mr. Brice induced K.H., a juvenile, to participate in prostitution by "force, fraud, or coercion" in violation of 18 U.S.C. § 1591.

Following trial, the jury convicted Mr. Brice on 9 of 11 counts.  Significantly, the jury acquitted Mr. Brice on the only force-related count, which was the allegation that Mr. Brice engaged in the sex trafficking of Shakita Proctor by force, fraud or coercion.  The jury also acquitted Mr. Brice of transporting Ms. Proctor to Florida for the purposes of prostitution.  The jury convicted Mr. Brice of Sex Trafficking, Transportation of a Person for Prostitution, First Degree Child Sexual Abuse, and Pandering.  The jury had been specifically instructed that the consent of K.H. and/or Ms. Proctor to their participation in these crimes was not a defense to the charges.  The counts carrying the highest statutory maxima, Sex Trafficking of Children and Transportation of a Minor for Prostitution, each carry a statutory maximum of 40 years.

**B.  The Presentence Report.**

**1.      The Drafting Process.**

The jury returned its verdict on February 28, 2006.  Shortly thereafter, Mr. Brice's case was referred to the Probation Office for the PSR.  The Probation Officer interviewed Mr. Brice in

---

[1]      The defense has previously submitted Part I of Mr. Brice's Sentencing Memorandum, which addressed Mr. Brice's personal history for the Court's consideration of the "history and characteristics" of the defendant.  18 U.S.C. § 3553(a)(1).

2

the presence of his counsel.  Then, on March 28, 2006, the government submitted an <u>ex parte</u> letter to the Probation Officer which stated that it contained "the facts presented during the February 21, 2006 trial of Jaron Brice <u>or otherwise obtained during the course of the</u> <u>government's investigation of Mr. Brice</u>."  Ex. 1 (3/28/06 letter from government counsel to probation) (emphasis added).  As indicated by Paragraph 4 of the PSR, the PSR adopted the information submitted in the government's letter <u>in toto</u>.  <u>Compare</u> Ex. 1 <u>with</u> PSR ¶¶ 4-15**.**

On May 1, 2006, the defense submitted its objections to the PSR.  Among other things, the defense objected to the factual background section of the PSR, as it was obvious that the information had simply been adopted wholesale from communications with the government.  <u>See</u> Ex. 2 (letter from defense counsel to probation).  Defense counsel also objected to the calculation of Mr. Brice's Guidelines range.

> ### 2.    Mr. Brice's Criminal History.

> ***Mr. Brice has one prior criminal conviction that contributes any criminal history points, for a misdemeanor***.  ***He has no prior felony convictions.***  The PSR is correct that Mr. Brice's prior misdemeanor conviction, for which he received 5 days in jail and 9 months probation, contributes only one criminal history point.  <u>See</u> PSR ¶ 67.  Because Mr. Brice was on probation when the offenses in this case occurred, the PSR adds another two criminal history points.  Accordingly, the PSR correctly concludes that Mr. Brice's criminal history category is II.

> ### 3.    Mr. Brice's Offense Level.

The PSR miscalculates Mr. Brice's Guidelines range.  First, the PSR applies the wrong guidelines.  Relying solely on acquitted and uncharged conduct, the PSR incorrectly follows a cross-reference from U.S.S.G. § 2G1 to § 2A1.3 (hereafter "2G/2A cross-reference").  Without

using acquitted and uncharged conduct, the correct guideline remains U.S.S.G. § 2G1.1, which still leads to a very substantial Guidelines range in this case.

In the absence of acquitted and uncharged conduct, there can be no dispute that Mr. Brice's Guidelines range under the 2005 edition of the Guidelines Manual is as follows:

**Counts 1 and 3 (Sex Trafficking of Children and Transportation of a Minor for Prostitution)**

Base Offense Level: U.S.S.G. § 2G1.3 (involving a minor [K.H.]):                     **<u>24</u>**

Specific Offense Characteristic: If the offense involved (A) the commission of a sex act or sexual contact; or (B) a commercial sex act, increase by 2 levels:                     **+2**

Adjusted Offense Level:                     **26**

**Count 4 (Transportation of a Minor for Prostitution)**

Base Offense Level: U.S.S.G. § 2G1.3 (involving a minor [K.H.]):                     **24**

Specific Offense Characteristic: If the offense involved (A) the commission of a sex act or sexual contact; or (B) a commercial sex act, increase by 2 levels:                     **+2**

Adjusted Offense Level:                     **26**

**Count 5 (Transportation of a Person for Prostitution)**

Base Offense Level: U.S.S.G. § 2G1.1(2) (not involving minor [Ms. Proctor]):     **14**

Adjusted Offense Level:                     **14**

**Multiple Count Adjustment**

Increase in Offense Level: U.S.S.G. § 3D1.4(a)                     **+2**

Total Offense Level:                     **28**

**Chapter 4 Enhancements**:

Because the offense of conviction is a covered sex crime and neither § 4B1.1 nor subsection § 4B1.5 apply, and the defendant engaged in a pattern of activity involving prohibited sexual conduct, pursuant to § 4B1.5(b)(1), five levels are added.                    **+5**

Total Offense Level:                                                                                  **33**

Given Mr. Brice's criminal history category of II (see discussion, supra; PSR ¶ 65), his Guidelines range, exclusive of acquitted and uncharged conduct, is **accordingly 151-188 months.**

* * *

The PSR found, however, that Mr. Brice's Guidelines range is in fact *life imprisonment*, notwithstanding the fact that Mr. Brice is only in criminal history category II. The PSR arrived at this result in reliance upon the government's summary of trial facts and facts allegedly uncovered during the government's investigation of this matter. See Ex. 1. Based on those facts, the PSR concluded that each of the three Count groupings involved conduct set forth in 18 U.S.C. § 2241 and § 2242,[2] even though Mr. Brice was either acquitted of (with respect to Ms. Proctor) or not ultimately charged with (with respect to K.H.) using "force fraud or coercion" in the commission

---

[2]       The defense objects to the failure of the PSR to group the Counts in paragraphs 20 and 29 together, since they involved the same victim (K.H.) and the same general conduct. See U.S.S.G. § 3D1.2(b) (grouping counts where they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan"). If the K.H.-related offenses were grouped together, Mr. Brice's offense level would be lower by one point. See PSR ¶¶ 50, 52 (assessing three instead of two offense level points under grouping rules). While 2A and 2G1.1 offenses are excluded from grouping under § 3D1.2(d), that section also states that "exclusion from an offense from grouping under this subsection does not necessarily preclude grouping under another section," such as subsection (b), as noted.

5

of these offenses.  To the contrary, with respect to all of the offenses Mr. Brice was convicted of, the jury was clearly instructed that consent of K.H. and/or Ms. Proctor <u>was</u> <u>not</u> <u>a</u> <u>defense</u> <u>to</u> <u>the</u> <u>charges</u>.

Furthermore, in a clear case of double and even triple counting, and despite clear Circuit law to the contrary, the PSR applies that same finding of sexual abuse to enhance Mr. Brice's guidelines range several times over.

Ultimately, based on:  (1) the use of acquitted conduct; (2) even more dubiously, the use of *uncharged and dismissed* conduct; and (3) the triple counting of offense conduct through three different guideline provisions, the PSR increased Mr. Brice's Guidelines range from **151-188 months** to **life imprisonment**.  As set forth below, the law clearly contemplates that acquitted and uncharged conduct, as well double-counted enhancements, should not be used to engender dramatic increases in a defendant's guideline range of the kind applied in the PSR and requested by the government.  This is especially true in this case, where there is no need or occasion to sentence Mr. Brice to multiple decades of incarceration in order to serve the goals of sentencing.

<u>**DISCUSSION**</u>

**I.     THE SENTENCING FRAMEWORK POST-BOOKER.**

The Court in <u>Booker</u> held that judges are required to "take account of the Guidelines <u>together</u> <u>with</u> other sentencing factors," and to "<u>consider</u>" the guidelines along with all the other required factors.  <u>United States v. Booker</u>, 543 U.S. 220, 259 (2005) (emphasis added).  But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court, because section 3553(a) remains in effect and sets forth numerous factors that guide sentencing.  <u>Id.</u> at 261.

6

Thus, court are now required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a). (Emphasis added).  These purposes include the necessity for the sentence:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Subsections (A) through (D) of § 3553(a)(2) thus highlight the primary purposes of sentencing.  See also § 3551 (defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . .").  In determining a sentence consistent with these goals, the court must consider a number of other factors as well-- see § 3553(a)(1) - (7) -- including "the nature and circumstances of the offense and the history and characteristics of the defendant," the sentencing guidelines and policy statements issued by the Sentencing Commission, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  In addition, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.

Following Booker, this court has explained that § 3553(a) "remains in effect, and sets

7

forth numerous factors that guide sentencing," and that because the guidelines are now advisory,

they are now "one among a number of factors to be weighed by the District Court in sentencing."

United States v. Price, 409F.3d 436, 442-3 (D.C. Cir. 2005).  The court also recently decided

United States v. Ayers, 428 F.2d 312 (D.C. Cir. 2005), a case in which the district court had,

before Booker, imposed a guidelines sentence and an alternative sentence that were identical.

The court remanded for resentencing because it was "in doubt as to whether the court considered

the other sentencing factors in § 3553(a) together with the Guidelines in formulating its non-

guidelines sentence."  Id. at 315.  The court stated that defendant's request to present mitigating

evidence reflecting factors not included in the guideline-oriented presentence report was

appropriate because "mitigating evidence would have been relevant, of course, to the court's

analysis under § 3553(a)."  Id.  The court also adopted, id. at 314, the view of the Second Circuit

in United States v. Lake, 419 F.3d 111, 114 (2d Cir. 2005), that "without the mandatory duty to

apply the guidelines, consideration of the other section 3553(a) factors 'acquires new

significance.'" (Quoting United States v. Crosby, 369 F..3d 103, 111 (2d Cir. 2005)).

More recently, the court decided United States v. Gomez, 431 F.3d 818, 822 (D.C. Cir.

2005), where the district court had treated the guidelines "as mandatory."  The defendant had

requested downward departures on various grounds, but the district court believed that the factors

did not warrant a departure.  Nevertheless, the court remanded for sentencing because, "if

Booker's rendering the Guidelines discretionary means anything, it must give a district judge

greater latitude on these issued that did Koon v. United States, 518 U.S. 81 (1996)."  Gomez, 431

F.2d at 825.  The court further noted that a denial of a departure was "a quite different inquiry"

from whether a district court "if subject to the guidelines only on a discretionary basis, . . . would

8

be reasonably likely to give a lower sentence." Id. at 826. This is because, in addition to the guidelines, "the district court must consider the criteria set forth in section 3553(a)." Price, 409 F.3d at 446 (Henderson, J., concurring) (emphasis in original).

In United States v. Brown, this circuit recognized that pre-Booker calculation can no longer be sustained on appeal when the trial court felt restricted from considering factors which the Guidelines would discard. United States v. Brown, 449 F.3d 154, 159 (D.C. Cir. 2006). The Brown court recognized that factors such as death and illness in the family, psychiatric treatment, and family difficulties may all weigh on the trail court's decision to depart from the sentencing regime. Id. The trial court in Brown committed reversible error when it expressed inability to consider such factors. Id. Despite the recognition that the trial judge may have reached the exact same sentencing decision, failure, after Booker, to consider a wider range of mitigating factors necessitated remand for resentencing. Id. at 160.

A number of other courts of appeals have recognized that the guidelines are not always consistent with other goals of sentencing and that those goals sometimes conflict with each other. A prime example is United States v. Serrata, 425 F.3d 886, 913-915 (10th Cir. 2005), where the district court had erred in granting departures under the guidelines for various factors. The court of appeals, held, however, that these same factors were relevant to the district court's consideration, under § 3553(a), of whether a sentence below the advisory guidelines range was appropriate. Id. at 918. The court noted that there "appears to be tension among the statutes and the guidelines . . . but, in the wake of Booker, the incongruity diminishes as sentencing judges are encouraged to exercise their discretion." Id. at 918-9.

Likewise, in United States v. Scott, 405 F.3d 615, 617 (7th Cir. 2005), the court stated

that" with the guidelines advisory the judge can take into account mitigating factors that the guidelines ignored."  "Anything but a loose comparison to pre-<u>Booker</u> departure cases would vitiate the post-<u>Booker</u> discretion that sentencing courts enjoy."  <u>United States v. Castro-Juarez</u>, 425 F.3d 430, 436 (7th Cir. 2005).  After <u>Booker</u>, factors that were discouraged as departures under the guidelines "might be afforded more weight in a particular case" under the statute.  <u>United States v. Lata</u>, 415 F.3d 107, 131 (1st Cir. 2005).

In <u>United States v. Nickl</u>, 427 F.3d 1286, 1303 (10th Cir. 2005), the court remanded for resentencing because although the district court had "concluded mandatory application of the sentencing guidelines prohibited it from granting a downward departure," the district court might not have imposed "the same sentence if it viewed the guidelines as merely advisory."  Factors "which were not available for consideration under the mandatory Guidelines regime," may now be considered in imposing sentence.  <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 81 (1st Cir. 2005).  However,

> It is worth noting that a district court's job is not to impose a "reasonable" sentence.  Rather, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2).  Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.

<u>United States v. Foreman</u>, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (emphasis in original).

## II.     MR. BRICE'S GUIDELINES RANGE PROPERLY CALCULATED IS 151-188 MONTHS.

### A.     The Court Should Elect Not To Rely On Acquitted Conduct.

Under the law of this Circuit, a sentencing court "<u>may</u> base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury."

United States v. Dorcely, ---F.3d---, 2006 WL 2034245, * 2 (D.C. Cir.) (emphasis added).  In

Dorcely, the trial court relied upon acquitted conduct to sentence the defendant to 24 months

imprisonment.  That sentence was an increase from the 0-6 month range the defendant was facing

based upon the offense of conviction.  The court of appeals in Dorcely held that the Supreme

Court's decision in Booker did not alter the rule from United States v. Watts, 519 U.S. 148, 151

(1997), in which the Supreme Court had recognized that the Sixth Amendment permits a

sentencing court to consider acquitted conduct.  The standard of proof for the use of acquitted

conduct is generally preponderance of the evidence.  See Watts, 519 U.S. at 156 ("the

preponderance standard at sentencing generally satisfies due process") (emphasis added).

      Importantly, however, neither the Supreme Court–nor any other court–has stated that a

Court *must* use acquitted conduct in sentencing a defendant.  Indeed, many jurists have declined

post-Booker to impose sentencing enhancements--especially substantial enhancements, as

requested in this case--based on acquitted conduct, with the recognition that "a just system of

criminal sentencing cannot fail to distinguish between an allegation of conduct resulting in a

conviction and an allegation of conduct resulting in an acquittal."  United States v. Concepcion,

983 F.2d 369, 389, 396 (2d Cir. 1992) (Newman, J., concurring); see also, United States v.

Coleman, 370 F. Supp. 2d 661, 667 (S.D. Ohio 2005) ("The Court ... will no longer consider

acquitted conduct when making sentencing determinations"); United States v. Huerta-Rodriguez,

355 F. Supp. 2d 1019, 1027 (D. Neb. 2005) ("[T]his court will require that a defendant is

afforded procedural protections under the Fifth and Sixth Amendments in connection with any

facts on which the government seeks to rely to increase a defendant's sentence").  As stated by

one appellate judge, the use of acquitted conduct "is jurisprudence reminiscent of Alice in

Wonderland ... As the Queen of Hearts might say, 'Acquittal first, sentence afterwards.'" <u>United</u>

<u>States v. Frias</u>, 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J., concurring); <u>see also</u> Daniel J. Freed,

<u>Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on The Discretion of</u>

<u>Sentencers</u>, 101 Yale L.J. 1681, 1714 (1992) ("Most lawyers, as well as ordinary citizens

unfamiliar with the daily procedures of criminal law administration, are astonished to learn that a

person in this society may be sentenced to prison on the basis of conduct of which a jury has

acquitted him, or on the basis of charges that did not result in conviction").

Indeed, this Court (Friedman, J.) has twice stated that it will not rely on acquitted conduct

in making sentencing determinations. <u>See</u> <u>United States v. Garris</u>, No. 03-268 (D.D.C. Feb. 10,

2006) ("If the criminal justice system means anything, it ought to mean that once somebody is

acquitted of something, that ought to have no bearing on sentencing"); <u>United States v. Baldwin</u>,

389 F. Supp. 2d 1, 2 (D.D.C. 2005) (holding that, post-<u>Booker</u>, Court would use acquitted

conduct only where proven beyond a reasonable doubt); <u>but see</u> <u>United States v. Edwards</u>, 427 F.

Supp.2d 17 (D.D.C. 2006) (discussed *infra*). The cases declining to use acquitted conduct apply

with particular force where, as here, the Guidelines range for the offenses of conviction (151-188

months), is more than sufficient to punish the defendant and protect the public.

**B.**     **The Court Should Not *And Cannot* Rely On Dismissed Conduct Absent A Further Evidentiary Hearing.**

As the government correctly notes, "[t]here was no 'acquitted conduct' relating to K.H."

Gov. Mem. at 14 n.9. The government *dismissed* the only count involving force and K.H. prior

to trial; the only count for which consent <u>was</u> a defense. Thus, as the government concedes, the

only way this Court could find that the Guideline should switch from 2G to 2A for the K.H.-

12

related counts would be to use *uncharged* conduct.

The use of uncharged conduct--such as the allegation that Mr. Brice induced K.H. to participate in prostitution by force, fraud or coercion--cannot in the wake of <u>Booker</u> and <u>Crawford v. United States</u>, 531 U.S. 36 (2004), be used to increase Mr. Brice's sentence.  This is particularly true where, as here, the government *dismissed* the relevant count on the eve of trial, and Mr. Brice's counsel accordingly had no incentive to litigate the consent of K.H. at trial <u>because the government had dismissed the only charge where consent was a defense</u>.  In other words, in the absence of a pending charge on the matter, defense counsel had no reason to (and, indeed, did not) cross-examine the witnesses on the factual issues the government now seeks to rely upon to enhance substantially Mr. Brice's sentence, <u>i.e.</u>, whether K.H. participated in prostitution out of fear or for some other reason.

The use of conduct underlying a dismissed charge to enhance Mr. Brice's sentence would deprive Mr. Brice of his right of to confront witnesses through cross-examination on the pertinent issues.  <u>See</u> <u>generally</u> <u>Crawford</u>, 541 U.S. at 43 ("The right to confront one's accusers is a concept that dates back to Roman times").  Accordingly, if the government seeks to use uncharged conduct to enhance Mr. Brice's sentence, it must present the evidence at an evidentiary hearing where the witnesses are subject to cross-examination on the pertinent issues underlying the government's proposed enhancements.  <u>See, e.g.,</u> <u>Huerta-Rodriguez</u>, 355 F. Supp. 2d at 1027 ("[T]his court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence").

**C.      Assuming *Arguendo* The Court Elects To Rely On Acquitted And Uncharged Conduct To Enhance Mr. Brice's Sentence, the Government Has Not Established The Sentencing Enhancements By A Preponderance Of The Evidence.**

Assuming *arguendo* that the Court determines that it will impose sentencing enhancements relying solely upon acquitted and/or uncharged conduct, the central Guidelines issue is whether the government has carried its evidentiary burden for applying the 2G/2A cross-reference.  The 2G/2A cross reference applies only where the government has established with the requisite level of proof that the offenses involved conduct described in 18 U.S.C. § 2241 or § 2242.  See § 2G1.3(a)(3).

Sections 2241 and 2242 are codified under Chapter 109A of the United States Code, which proscribes "sexual abuse" in the "special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison."  Section 2241, titled "Aggravated sexual abuse," applies where a defendant compelled another individual to engage in sexual acts "by using force against that other person," § 2241(a)(1); or "by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping."  18 U.S.C. § 2241(a)(2).  Section 2242, titled "Sexual abuse," proscribes the forced commission of sexual acts by "threatening or placing that other person in fear."  The import of these statutes is clear; they provide a basis for federal jurisdiction in rape and sexual assault cases.

The parties agree that, in order to find that Mr. Brice's sentence should be enhanced based on the 2G/2A cross-reference, the Court must initially find by at least a preponderance of the evidence that:

14

the defendant caused K.H. and Shakita Proctor to engage in sexual acts . . . by 'using force' against them and 'by threatening or placing [them] in fear that [they would] be subjected to death [or] serious bodily injury,' 18 U.S.C. § 2241, and by 'threatening or placing [them] in fear (other than by threatening or placing [them] in fear that they would be subjected to death, serious bodily injury, or kidnapping)."  18 U.S.C. § 2242.

Gov. Mem. at 15.

The government is incorrect, however, that the Court should apply the 2G/2A cross-reference based on the government's argument that it applies because "K.H. and Shakita Proctor testified that the defendant physically assaulted K.H. a number of times with a gun and his fists when she did not comply with this rules."  Gov. Mem. at 15.  "To the extent that an enhancement detracts from a defendant's liberty, its imposition should be considered with extreme scrutiny."  Coleman, 370 F. Supp. 2d at 668 n.8.  Respectfully, the 2G/2A cross-reference–which creates a draconian increase in Mr. Brice's Guidelines range–does not apply based on the fact that there was testimony at trial from K.H. and Ms. Proctor concerning violence or fear.  Rather, as the statutory language of § 2241 and § 2242 makes clear, there must be a direct nexus between the physical assaults and the sexual acts.  See, e.g., United States v. Evans, 285 F.3d 664, 672 (8th Cir. 2002) (applying 2G/2A cross-reference as § 2241(a)(1) was met because defendant would "forc[e] the victim to have sex with him"); United States v. Banks, 2006 WL 2034639 (unpublished) (11th Cir.) *1 (applying cross-reference where evidence showed that "Banks used force to cause a minor to engage in a sexual act with another person").

While the trial did include testimony concerning physical assaults, it did not establish a direct nexus between any "force," "threat[]" or "placing in fear," on the one hand, and the commission of sexual acts, on the other.  The government's own statements of fact illustrate why

there is no direct connection between "force" and the sexual acts themselves.  For example, the

government takes the position that the cross-reference should apply because, inter alia, a

"dangerous weapon was used or brandished."  Gov. Mem. at 15 (quoting § 2G1.3 n.5(B)(i) and §

2G1.1 n.4(a)).  In support of its position, the government cites Application Notes 2G1.3

n.5(B)(1) and 2G1.1 n.4(a), which state that "this provision would apply, for example, if any

dangerous weapon was used or brandished..."  But the import of the Application Notes is clear:

the 2G/2A cross-reference should apply if the weapon was used or brandished to force the victim

to engage in sex, not if it was employed in some other manner during the offense conduct.  There

was no testimony in this case connecting the use of a firearm, on the one hand, and forcing K.H.

or Ms. Proctor to commit sexual acts, on the other.[3]  The defense respectfully submits that there

are many horrible cases involving instances of forced or compelled commission of sexual acts.

In those cases, the 2G/2A cross-reference is appropriate.  The evidence in this case, however,

does not support the use of the 2G/2A cross-reference.

    As a further example, the trial transcript makes it amply clear that K.H. did not participate

in sex acts out of fear of Mr. Brice (which must be precisely why the government dismissed the

18 U.S.C. § 1591 count with respect to K.H. on the eve of trial).  To the contrary, it is clear from

the trial evidence--indeed, it was the government's very theory--that K.H. did not participate in

---

    [3]    Ms. Proctor, for example, testified that she saw Mr. Brice use a firearm on "two or
three" occasions.  See Trial Tr. at 26-31.  One occasion involved an incident involving an alleged
drug transaction between Mr. Brice and a third party "crackhead."  See id. at 27.  Another
involved an incident where K.H. and Mr. Brice were feuding over jealousy issues related to Mr.
Brice's relationship with Ms. Proctor.  See id. at 25-26.  The third involved Mr. Brice's
possession of a firearm related to K.H.'s attempt to kidnap Ms. Proctor.  See id. at 29-30.  None
of the aforementioned instances demonstrate Mr. Brice's using a gun to "engage[] in, or caus[e]
another person to engage in, a sexual act with another person," as the 2G/2A cross-reference
requires.  See § 2G1.3 n.5(B)(i).

prostitution due to fear of Mr. Brice.  To the contrary, the government's theory in this case, and

what K.H. testified to, was that K.H. participated in prostitution out of love for Mr. Brice.  See,

e.g., Gov. Mem. at 17 ("Both [K.H. and Ms. Proctor] were convinced by [defendant] to subject

their bodies to the sexual pleasure of numerous anonymous men each night, to have regular

sexual activity with him, and to stay with him despite the physical abuse and psychological

torture they endured") (emphasis added); Trial Tr. at 203 (during ex parte bench conference

between government and Court; government states "I was hoping that there was some way that

the jury could see [K.H.] come in to see the defendant for the first time because I anticipate that

there's going to be a reaction because she's so in love with him and when she saw the photo

spread, she sobbed, I was there") (emphasis added).

> **D.    Assuming *Arguendo* the Court Elects To Rely on Acquitted Conduct And Finds That The Government Has Proven The 2G/2A Cross Reference, Mr. Brice's Guideline Range Must Still Be Adjusted Downward Because of Impermissible Double and Triple Counting.**

Even if the Court determines it should employ the 2G/2A cross-reference, and thereby

substantially increase Mr. Brice's Guidelines range, the enhancements based on conduct under §

2241 and § 2242 should end at that point.  In addition to the dramatic increase that results from

the 2G/2A cross-reference, the PSR enhances Mr. Brice's guidelines range a second and third

time on the very same basis, i.e., because his conduct involved conduct under § 2241 and § 2242.

This is impermissible double counting.

"The law of this circuit is that when two enhancement provisions of the Guidelines

involve separate elements, a defendant's based offense level may be increased by both if the

government proves the elements by a preponderance of the evidence."  United States v.

Gottfried, 58 F.3d 648, 653 (D.C. Cir. 1995); see also United States v. Bapack, 129 F.3d 1320

(D.C. Cir. 1997) (noting that where "two enhancements were based on separate elements of the

defendant's offense, their cumulative application did not punish him twice for the same

conduct") (emphasis added).  As stated in United States v. Farrow, 198 F.3d 179 (6th Cir. 1999):

> [W]e adhere in this case to our well-established rule that impermissible 'double
> counting' occurs when precisely the same aspect of a defendant's conduct factors
> into his sentence in two separate ways.  By observing this rule, we seek to advance
> one of the overarching purposes of the Sentencing Guidelines as set forth in an
> introductory Policy Statement; namely, to achieve 'proportionality in sentencing
> through a system that imposes appropriately different sentences for criminal
> conduct of differing severity ... If a single aspect of the defendant's conduct
> determines his offense level and triggers an enhancement, this defendant's final
> offense level will be the same as that of a defendant who engages in two forms of
> conduct deemed punishable under the Sentencing Guidelines.  Such an
> assignment of equal offense levels for conduct of differing severities undermines
> the Guidelines goal of proportionality in sentencing.

Id. at 193-95.

Similarly, in United States v. Hudson, 972 F.2d 504 (2d Cir. 1995), the Second Circuit

reversed the district court for employing one factual finding to enhance a defendant's sentence

twice.  In Hudson, the district court enhanced defendant's sentence for "otherwise using a

dangerous weapon."  The defendant attempted to run over U.S. Marshals with his car, and his

base offense level was calculated under the aggravated assault guideline.  The aggravated assault

guideline was chosen because the defendant not only possessed, but in fact *used*, a dangerous

weapon (his car).  Then, the district court also imposed a four level enhancement because

defendant "otherwise used" a dangerous weapon.  The Second Circuit held that application of the

enhancement had resulted in "impermissible double counting," because the same act that raised

the offense level was the basis of an enhancement, also.  See id. at 507 ("This two-fold upward

18

adjustment for the use of a weapon constitutes impermissible double counting").

Here, the PSR increases Mr. Brice's Guidelines range <u>three times</u> based on a single factual finding:  that the offenses in this case involved conduct contained in 18 U.S.C. § 2241 or § 2242.

*First*, the PSR increases Mr. Brice's highest base offense level from a 24 to a 30 based on the 2G/2A cross reference because "the offense involved conduct described in 18 U.S.C. § 2241 or § 2242."  <u>See</u> U.S.S.G. § 2G1.3(c)(3); <u>see also</u> PSR ¶¶ 21, 30 and 39.  Thus, at the first step, the PSR has already imposed a six-level increase based on a factual finding of conduct involving sections 2241 or 2242.

*Second*, the PSR applies a four-level enhancement under U.S.S.G. § 2A3.1(b)(1) because, again, the offense involved conduct described in 18 U.S.C. § 2241.  <u>See</u> PSR ¶¶ 22, 31 and 40. The use of this enhancement in a case where the 2G/2A cross reference has already been applied is plainly double counting, as no additional conduct is required beyond what was already required for the 2G/2A cross reference to make this enhancement applicable.  <u>See</u> <u>Gottfried</u>, 58 F.3d at 653 ("The law of this circuit is that when two enhancement provisions of the Guidelines **involve separate elements**, a defendant's based offense level may be increased by both if the government proves the elements by a preponderance of the evidence") (emphasis added).

*And third*, the PSR adds yet another two points under § 2A3.1(b)(4)(B), based on the same conduct used for the 2G/2A cross reference and then used again for the four point enhancement under U.S.S.G. § 2A3.1(a).  <u>See</u> PSR ¶¶ 24, 33 and 41.  Section 2A3.1(b)(4)(B) ordinarily applies where "the victim sustained serious bodily injury," but the PSR asserts that it applies here only because of 1B1.1, Application Note 1(L), which states that "serious bodily

injury is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2241." Thus, Mr. Brice's Guidelines range has been enhanced yet again--and three times total--based on the single factual finding that the offense involved conduct described in 18 U.S.C. § 2241 or § 2241.

* * *

In the absence of any double or triple counting (and assuming *arguendo* that the 2G/2A cross reference applies at all), the appropriate guideline should be the guideline after applying only the 2G/2A cross reference – in other words, after increasing Mr. Brice's Guidelines range based on § 2241 or § 2241 conduct one time. After enhancing Mr. Brice's Guidelines range only a single time for the same conduct, as the law required, Mr. Brice's base offense level is 30. After adding two points in K.H.'s case because the "victim had attained the age of 12 years but not the age of 16 years" under § 2A3.1(b)(1) (the only offense level enhancement that does not involve impermissible double counting), the adjusted offense level is 32. After then adding 5 points under the Chapter 4 Enhancements (pursuant to § 4B1.5(b)(1))–which defendant submits should not apply, see discussion, *infra*), Mr. Brice's total adjusted offense level is 37, and the Guidelines range is accordingly **235-293 months.**

### E.    The Court Should Not Apply The Five-Point Enhancement At § 4B1.5 For "Repeat And Dangerous Sex Offender(s) Against Minors."

The revised PSR applies a five point offense level enhancement for "Repeat And Dangerous Sex Offender(s) Against Minors." Under the plain terms of the guideline, this section does not apply. As the guideline makes clear, its purpose is to address pedophiles and compulsive sex offenders against children. It is not appropriate in this case. See § 4B1.5(b)(1)

Background Note ("This guideline is intended to provide lengthy incarceration for offenders who commit sex offenses against minors and who present a continuing danger to the public").  In the absence of this 5-point enhancement, Mr. Brice's Guidelines range is **135-168 months.**

III.    **THE INCREASE IN MR. BRICE'S GUIDELINE RANGE TO *LIFE IMPRISONMENT* BASED ON ACQUITTED CONDUCT IS NOT AUTHORIZED BY <u>UNITED STATES V. WATTS</u> AND WOULD VIOLATE MR. BRICE'S RIGHT TO DUE PROCESS.**

If the Court does elect to rely on acquitted conduct (which the defense respectfully submits it should not, <u>see</u> discussion, *supra*), it still may not be used to increase Mr. Brice's sentence in the draconian manner contained in the PSR and sought by the government.  While the Supreme Court in <u>United States v. Watts</u> authorized the consideration of acquitted conduct in some circumstances, as this Circuit noted in <u>Dorcely</u>, "[t]he Court [in <u>Watts</u>] left open the question whether a higher standard of proof might be necessary <u>if relevant conduct *dramatically* increased the sentence</u>."  <u>Dorcely</u>,2006 WL 2034245, * 8 (citing <u>Watts</u>, 519 U.S. at 156-57) (emphasis added).  The two consolidated cases before the Supreme Court in <u>Watts</u> did "not present such exceptional circumstances, and [the Court] therefore [did] not address that issue." <u>Watts</u>, 519 U.S. at 156-157.

The case law from other circuits and from other courts in this Circuit is clear that a *dramatic* increase in a defendant's sentence based on acquitted conduct– such as the increase reflected in the PSR and sought by the government in this case – would violate Mr. Brice's right to due process.  <u>See</u> <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 88 (1986) (upholding use of acquitted conduct under preponderance standard where "there was no allegation that the sentencing enhancement was "a tail which wags the dog of the substantive offense"); <u>United</u>

21

States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005); United States v. Gigante, 39 F.3d 42, 48 (2d
Cir. 1994); United States v. Lombard, 72 F.3d 170, 186-87 (1st Cir. 1995) (recognizing departure
for when acquitted conduct results in substantial increase in sentence); United States v. Townley,
929 F.2d 365, 369 (8th Cir. 1991) ("At the very least, McMillan allows for the possibility that the
preponderance standard the Court approved for garden variety sentencing determinations may
fail to comport with due process where, as here, a sentencing enhancement factor becomes 'a tail
which wags the dog of the substantive offense'").

Indeed, in United States v. Edwards, 427 F. Supp.2d 17 (D.D.C. 2006), a case repeatedly
cited by the government as authorizing the use of acquitted conduct at sentencing post-Booker,
Judge Bates directly addressed the situation at issue in this case. In Edwards, the increase
imposed by Judge Bates was merely a "**two-level enhancement** to the Guidelines base offense
level, based on the Court's finding that [the defendant] possessed a firearm during the drug
offense." Cf. Pimental, 367 F. Supp. 2d at 152 ("The facts that the government sought to have
me consider are not facts enhancing the crime of conviction, like the presence of a gun or the
vulnerability of the victim. Rather, they are facts comprising different crimes ..."). The two
point enhancement was imposed despite the fact that the defendant was acquitted on the firearm
charge in that case. Id. (emphasis added). The Court stated:

> [Courts have] express[ed] concerns over situations where dramatic enhancements
> based on acquitted conduct become a 'tail which wags the dog of the substantive
> offense.' [citations omitted] But presumably, in those cases where enhancements
> become unreasonable in relation to the convicted offense, a sentencing court
> would depart from the advisory Guidelines range pursuant to the provision in 18
> U.S.C. § 3553(a) requiring a court to consider the need for the sentence imposed
> 'to reflect the seriousness of the offense, to promote respect for the law, and to
> provide just punishment for the offense.)

Id. at 26.

Here, the increase from Mr. Brice's Guidelines range based on the offenses of conviction–**151-188 months** to a sentence of ***life imprisonment***--is plainly allowing the sentencing enhancements sought by the government to become the "tail which wags the dog of the substantive offense."  Watts, 519 U.S. 637 n.2 (quoting McMillan, 477 U.S. at 88).  Here, as Judge Nancy Gertner found in Pimental, "the facts that the government sought to have [the Court] consider are not facts enhancing the crime of conviction, like the presence of a gun or the vulnerability of the victim.  Rather, they are facts comprising different crimes..." 367 F. Supp. 2d at 152

Thus, as a matter of constitutional avoidance, at a minimum, the Court should decline to impose the dramatic increases in Mr. Brice's Guidelines range based upon the use of acquitted and uncharged conduct.[4]

---

[4]    The Court should further note that the most serious offense Mr. Brice was convicted of–Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591–carries a statutory maximum of 40 years.  Mr. Brice obviously could not be sentenced to life imprisonment based on this count.  See generally Dorcely, 2006 WL 2034245, at * 8 ("Under Booker, consideration of acquitted conduct violates the Sixth Amendment . . . if the judge imposes a sentence that exceeds what the jury verdict authorizes"); Edwards, 427 F. Supp.2d 17 (Bates, J.) ("The 'maximum sentence authorized' by a jury verdict, after Booker, is not the top of the now-advisory Guidelines range for the convicted offense, but rather the statutory maximum for the offense under the United States Code–which is often much higher than the Guidelines range").  And yet, in seeking a sentence of *life imprisonment*, the government requests a sentence beyond that statutory maximum.  Thus, to even approach the government's proposed sentence of life imprisonment, the Court must stack the maximum penalties for at least two other counts on top of the maximum penalty for § 1591.  See Gov. Mem. at 2; PSR at 18.  While not expressly addressed by the government, in order to achieve the sentence the government seeks, the Court must also make some estimate of how long this human being, Jaron Rashea Brice, will live.

IV.    **UNDER THE POST-<u>BOOKER</u> SENTENCING METHODOLOGY, THE APPROPRIATE SENTENCE IN THIS CASE IS NO MORE THAN TEN YEARS.**

Part I of Mr. Brice's Sentencing Memorandum (and the accompanying sentencing video) addresses "the history and characteristics of" Mr. Brice.  18 U.S.C. § 3553(a).  In addition, the above discussion of the Guidelines and the attached summary of trial testimony addresses the nature of the offense.  The remaining 3553(a) factors are addressed below.

A.    **"The Need To Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct."**

1.    **"Comparable Cases."**

In asking this Court to impose a sentence of life imprisonment, the government presents the Court with a selection of other sex trafficking cases involving high sentences.  The ***only*** case involving a sentence of life imprisonment, <u>United States v. Carlos Curtis</u>, 03-533 (GK), involved a radically different set of circumstances from the present case.  First, unlike the present case, ***the conviction in <u>Curtis</u> was not Mr. Curtis's first conviction for a prostitution-related crime***.  In February 1998, Mr. Curtis was convicted of Promoting Prostitution With a Minor in New Jersey, in violation of New Jersey Statute 2C:34-1b(3).  The 1998 conviction involved Mr. Curtis "pimping" a runaway 14 year old girl.  For that offense, Mr. Curtis on September 3, 1999 received a sentence of four (4) years incarceration.

In addition to Mr. Curtis' prior conviction for a sex trafficking offense, Mr. Curtis also had an extensive criminal history involving a variety of other crimes, including assault and drug trafficking.  As a result, ***Mr. Curtis was a career offender under the sentencing guidelines***.  By contrast, ***Mr. Brice has only one prior conviction*** that contributes any criminal history points, and that conviction is for a misdemeanor.  The <u>Curtis</u> case also differed from the present case in

that among Mr. Curtis' prostitutes was a 12 year-old girl.  It also involved a charge of tampering

with a witness; specifically, Mr. Curtis attempted to prevent a cooperating government witness

from testifying against him by having his jaw broken the night before the witness was scheduled

to testify.  And finally, Mr. Curtis was also charged with obstruction of justice for attempting to

influence the testimony of one of his former prostitutes who was testifying against him.

In contrast to <u>Curtis</u>, Mr. Brice's sentence should be much closer to those cases with

comparable facts and to those defendants with comparable backgrounds.  In the <u>Gates</u> case,

Judge Huvelle sentenced Mr. Gates–whose conduct was of a more vile character than anything

seen in this case–to 178 months.  Mr. Gates' assistant pimp received a sentence of 108 months.

While Mr. Gates did take a plea, it is unjust to increase Mr. Brice's sentence from the area of 12-

15 years to ***life imprisonment*** simply because Mr. Brice exercised his constitutional right to trial.

### B.     A Sentence Of Life Imprisonment Is Far "Greater Than Necessary" Under The Facts Of This Case.

If <u>Booker</u> means anything, it means that this Court may now "dispense mercy on the basis

of factors too intangible to write into a statute."  <u>Gregg v. Georgia</u>, 428 U.S. 153, 222 (1976)

(White, J., concurring in judgment).  Accepting the jury's verdict, this case features reprehensible

conduct.  But life imprisonment is simply not a just, or reasonable, sentence for Jaron Brice, a

30-year old father of two young boys, and a man with no prior felony convictions.  Such a

sentence would be far "greater than necessary, to comply with the purposes set forth in" §

3553(a)(2).

Instead, consistent with 18 U.S.C. § 3553(a)(1) and <u>Booker</u>, the Court should sentence

Mr. Brice to a sentence that comports with the three main categories of sentencing factors:  the

25

nature of the offense, the history and characteristics of the of the defendant, and the needs of the public, which also includes <u>consideration</u> of the Guidelines.  Based upon those factors and the information concerning Mr. Brice discussed above and in Part I of his Memorandum In Aid of Sentencing, the defense respectfully submits that a reasonable sentence in this case would be no greater than 120 months, or ten years.

<u>**CONCLUSION**</u>

WHEREFORE, this Memorandum is submitted for this Court's consideration and to encourage the Court to sentence Mr. Brice to a sentence of no greater than 120 months.

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/S/_____
Shawn Moore
Jonathan S. Jeffress
<u>Counsel for Jaron. Brice</u>
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500

26